It is unnecessary to state the defences set up by the defendant Ledbetter, nor the testimony filed, as they are set forth in the opinion of
 

 Gaston, Judge,
 

 who, after stating the substance of’the bill, as above, proceeded as follows : — The defendant Led-better resists this claim, on three grounds ; first, he alleges that the contract between himself and Elms was not for an absolute sale of the land in dispute, but for a sale with an exception of an estate for life therein to his, the defendant Ledbetter’s, father; secondly, for that the plaintiff relied on the bond of Elms and Bradley, for the performance of Elms’s stipulation; and not upon any equitable relief which he might have against the said defendant; took no assignment of said defendant’s bond to Elms, but left it with Elms, who was permitted to prosecute the suit for a title in his own name; and thirdly, that some of
 
 *498
 
 the said defendant’s notes which he executed to Elms upon the compromise, have come to the plaintiff’s hands with full knowledge of the consideration on which
 
 they
 
 -were given. Testimony was offered in support of the first ground of defence; and it was read, subject to an objection on the part of the plaintiff, that parol evidence could not be admitted to contradict or explain a written instrument, except in the exercise of a jurisdiction to reform that instrument because of fraud, accident, or mistake ; and that there was no allegation on the part of the defendant in this case, of any facts showing either fraud, accident, or mistake in the drafting of the instrument in question. On the part of the defendant, it was admitted that
 
 relief
 
 is not granted in Courts of Equity against written instruments, except in the exercise of the jurisdiction above referred to; but it was urged, that the
 
 execution
 
 of written agreements may always be resisted on the ground, that they do not conform to the actual agreement of the parties. It is proper to remark, that in the case before us, it is not pretended, that the written agreement between the parties had been waived and a new agreement entered into, or that the agreement, after being reduced to writing, had been altered by parol, but simply that the written is not the true agreement, without the averment of any matter wherefore the. written agreement did not conform to the intention of the parties. Unquestionably, parol evidence may be received to repel a demand for specific performance of an agreement, where it would be inadmissible to vary the written agreement in order to have it executed in its new form. The latter cannot be permitted without a violation of the statute of frauds, which denies efficacy to agreements not reduced to writing. But it does not follow, because parol evidence offered to repel or rebut an equity,
 
 is not
 
 against the
 
 statute of frauds,
 
 and is therefore, often for that purpose, admissible, when it could not be received to make out an agreement sought to be enforced, and which the statute requires to be in writing; that therefore, the rule of law, which, independently of any statute, forbids a written contract to he contradicted, explained, or varied, by extrinsic tes
 
 *499
 
 timony, does not prevail in equity equally as in law, and against defendants resisting specific execution, as well as against all other parties to such instruments. The reverse is stated in one of the cases referred to by the defendant’s counsel,
 
 (Clowes
 
 v.
 
 Higgenson,
 
 1 Ves. & Bea. 524,) with a precision and accuracy, that render any addition or explanation unnecessary. A bill had been formerly brought by Higginson against Clowes, 15 Ves. Jun. 516, to compel the execution of an agreement for the
 
 purchase
 
 of an estate, consisting of seven distinct lots; and it was insisted by the plaintiff in that action, that it was part of the agreement, that the trees on
 
 all
 
 these lots were to be taken at a valuation. The defendant resisted the execution, because, as he insisted, the agreement bound him to pay only for the trees on
 
 two
 
 of the lots. Parol evidence was offered on the part of the then plaintiff, of the declarations made by the auctioneer at the time of the auction; which evidence the Master of the Rolls (Sir William Grant,) refused to receive, holding that sales at auction were within the statute of frauds; and that the whole of the agreement, was by that statute required to be in writing. The vendor’s bill being dismissed, Clowes, the vendee, then brought his bill against Higginson to have the agreement of
 
 sale
 
 executed according to
 
 his
 
 construction of the contract, when the vendor offered this parol evidence to
 
 repel
 
 the execution of the agreement as demanded; but the Vice-Chancellor (Sir Thomas Plumer,) rejected it, because of the general rule of law, which he declared to be also the rule in equity, that parol evidence could not be received to explain or contradict a written agreement, whether offered by a plaintiff seeking specific performance, or by a defendant resisting it. He declared, that the rule admitting the evidence in the latter case, was intelligible and clear : that it never was admitted to show that the writing purporting to be the contract is not the contract; not to vary the agreement as it is expressed, open to no objection, and therefore upon the face binding; but to show circumstances of fraud, or making out a
 
 clear
 
 case of
 
 mistake
 
 or
 
 surprise,
 
 and thus rendering a specific performance unjust. With respect to the latter head, of
 
 *500
 
 mistake or surprise, he was emphatic in stating that great caution was required in the application of the evidence, lest, under the pretence of proving mistake or surprise, the rule should be relaxed, by letting in evidence to to explain, alter, or contradict, and thus in effect to get rid of a written agreement. In our opinion, the rule is properly laid down by the Vice-chancellor, and the objection made to the parol evidence in this case is well founded.
 

 It may, however, afford satisfaction to the parties to be informed, that upon the parol evidence this Court entertains a clear opinion against the defendant. The explicit testimony of Dr. MTntyre, who was selected by the parties to draft the instrument, to whom they made known the bargain, who wrote the instrument conforma-bly to their instructions, and who read it over to them previously to its execution, and then learned that it expressed their agreement, very far outweighs
 
 the “ understanding”
 
 (as the deponent describes his belief,) of the subscribing witness, that Elms was not to take possession-until after the old man’s death, and loose observations of Elms, testified to by two other witnesses, as declaratory of that purpose.
 

 The other objections made by the defendant Ledbetter furnish no defence against the relief sought by the plaintiff. The answer distinctly admits, and if it did not, the proofs unequivocally establish, that after Elms had purchased the land in controversy from Led better, he sold the same land to the plaintiff; that the plaintiff paid the price stipulated for in his purchase from Elms; and that the defendant had full knowledge of all these facts before he entered into the contrivance with Elms to defeat the plaintiff’s purchase. In equity, the contract and payment of the purchase-money constituted the plaintiff complete owner of the estate, and as such he became entitled, and is yet entitled to demand a conveyance of the legal title. The bond which the plaintiff took from Elms was but a
 
 security
 
 for procuring that title, and for procuring it at Elms’s cost. The suit brought by Elms was a step taken in order to get the title for the plaintiff; and the arrangement made
 
 *501
 
 between Ledbetter and Elms was a gross fraud upon the rights of the plaintiff. It is not pretended by the defendant, that this arrangement was made with the knowledge or privity of the plaintiff, or that it afterwards in any way received his sanction. If the defendant has any equity to be relieved from the payment of the notes which he passed to Elms under this arrangement, and these notes, or any of them have come into the hands of the plaintiff, this equity must be asserted in an appropriate way, but furnishes no defence in this action.
 

 Elms has answered the plaintiff’s bill — sets up no defence against it, but offers in excuse for his scandalous breach of honesty, the temptations of Ledbetter, and his sore distress.
 

 The Court is therefore of opinion, that as against these defendants, the plaintiff is entitled to a decree for a conveyance of the legal title in the land mentioned in the bill, and to an account for the profits made, or which might have been made by either of them thereon, from the time when full payment was made to the defendant Ledbetter, and also to his costs.
 

 The plaintiff has not prayed us for any decree against the defendant Bradley ; nor, as at present advised, do we think that a decree can be had against him. But as the cause has not been heard between the plaintiff and the defendant Bradley, that part of it, and all other matters, will be reserved until the coming in of the report, or until the Court shall be further moved thereon.
 

 Pr¡R Curiam. Decree accordingly.